**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-cr-00010-TWP-VTW |
| | ) | |
| ANTHONY BRICEST, JR., | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

This matter is before the Court on Defendant Anthony Bricest Jr.'s ("Bricest") Motion to Dismiss Indictment as to Count I (Filing No. 16) and Motion to Dismiss Count II of the Indictment (Filing No. 18). A federal grand jury indicted Bricest with Count I: Possession of Firearms by a Felon in violation of 18 U.S.C. § 922(g)(1) and Count II: Possession of Ammunition by a Felon in violation of 18 U.S.C. § 922(g)(1) (Filing No. 1 at 1). Bricest now moves to dismiss both Counts of the Indictment on the grounds that Section 922(g)(1) violates the Second Amendment. For the reasons discussed below, the Motion is **denied**.

## I.    BACKGROUND

The Indictment charges in Count One that on November 12, 2024, Bricest, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: Felony Possession of an Altered Firearm on or about October 24, 2023; did knowingly possess a firearm in violation of Title 18, United States Code, Section 922(g)(l ). (Filing No. 1). Count Two charges that on November 12, 2024, Bricest, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: Felony Possession of an Altered

Firearm[1] on or about October 24, 2023; did knowingly possess ammunition in violation of Title 18, United States Code, Section 922(g)(l). Bricest argues that the charges against him are unconstitutional under the Second Amendment to the United States Constitution, in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and other binding precedent. (Filing No. 16), (Filing No. 18).

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. Proc. 12(b)(1). When considering a motion to dismiss a criminal indictment, the Court assumes that the indictment's factual allegations are true and must "view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). A constitutional challenge to a statute can be brought either as a facial challenge, or an as-applied challenge. To succeed on a facial challenge to the constitutionality of a statute, the moving party must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415 (2015). To succeed on an as-applied challenge, the moving party must show the statute is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

## III.    DISCUSSION

Bricest asserts the same arguments for both of his Motions stating he "incorporates by reference the legal arguments and memorandum previously submitted in support of the dismissal of Count 1, as the reasoning therein applies equally to Count 2." (Filing No. 18 at 2). Both Counts

---

[1] The Government mistakenly states in their brief that Bricest has multiple previous felony convictions including one for drug distribution (Filing No. 25 at 8). The Court believes this to be a typographical error which has no bearing on the outcome of the case.

allege a violation of 18 U.S.C. § 922(g)(1) occurring on the same date and allege the same predicate offense. Because Bricest challenges the constitutionality of the statute underlying both counts, the Court addresses both Motions simultaneously for the purposes of this discussion.

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The right to bear arms is one of the "fundamental rights necessary to our system of ordered liberty." *McDonald v. Chicago*, 561 U.S. 742, 778 (2010). "Derived from English practice and codified in the Second Amendment, the right secures for Americans a means of self-defense." *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022)). However, "the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*.

In *Heller*, the Supreme Court began its analysis of the right with the "constitutional text and history." *Bruen*, 597 U.S. at 22. "In *Bruen*, [the Supreme Court] directed courts to examine our 'historical tradition of firearm regulation' to help delineate the contours of the right." *Rahimi*, 602 U.S. at 691 (quoting *Bruen*, 597 U.S. at 17). The Supreme Court further explained that "if a challenged regulation fits within that tradition, it is lawful under the Second Amendment." *Id*. Though, the Government "bears the burden to 'justify its regulation.'" *Id*. (quoting *Bruen* 597 U.S. at 24).

The Supreme Court clarified in *Rahimi* that its recent Second Amendment cases such as *Heller* and *Bruen*, were misunderstood by some courts stating, "[t]hese precedents were not meant to suggest a law trapped in amber." *Id*. Instead, "the Second Amendment permits more than just

3

those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers." *Id*. at 691-692.

"[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id*. at 692. "A court must ascertain whether the new law is 'relatively similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id*. (quoting *Bruen*, 597 U.S. at 29) (alteration in original).

"Why and how the regulation burdens the right are central to this inquiry." *Id*. Even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.' The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id*. (quoting *Bruen*, 597 U.S. at 30).

Assessing Bricest's challenge with these principles in mind, the Court concludes that Section 922(g)(1) survives Bricest's challenge both facially and as applied.[2]

A.    **Section 922(g)(1) is Constitutional on its face**

For Bricest's facial challenge to succeed, he must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Accordingly, the Government need only demonstrate that Section 922(g)(1) is constitutional in some of its applications. The Court finds that the Government has satisfied this burden.

The Court's analysis begins with the binding precedent from the Seventh Circuit's decision in *United States v. Gay*, 98 F.4th 843 (7th Cir. 2024) (Filing No 81. At 3). In *Gay*, the Seventh

---

[2] Bricest's brief indicates that he is only challenging Section 922(g)(1) as applied to him (Filing No. 16 at 2). However, Bricest advances arguments that would invalidate Section 922(g)(1) on its face as well. *Id*. at 7-16. Accordingly, the Court addresses both challenges.

Circuit rejected a challenge to Section 922(g)(1) by an individual convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon in prison. *Id*. at 847. The Seventh Circuit held that the argument Bricest now asserts, that the Second Amendment permits convicted felons to possess firearms, is "hard to square with *Heller*." *Id*. at 846. "[I]n the course of holding that the Second Amendment creates personal rights [the Supreme Court in *Heller*] pointedly stated that 'longstanding prohibitions on the possession of firearms by felons' are valid." *Id*. (quoting *Heller*, 554 U.S. at 626). Then, the Supreme Court in *McDonald*, repeated the assurance that the "prohibitions on the possession of firearms by felons . . ." are valid. 561 U.S. at 786. Finally, in *Rahimi*, the Supreme Court once again endorsed the presumptive constitutionality of the prohibition on felons possessing firearms. 602 U.S. at 699 ("*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'") (quoting *Heller*, 554 U.S. at 626-627).

Bricest argues that pursuant to *Bruen*, Section 922(g)(1) is not historically justified (Filing No. 16 at 7). Bricest further contends that the Government cannot satisfy its burden of showing that laws such as Section 922(g)(1) comply with American legal tradition. *Id*. The Court disagrees.

As discussed above, *Rahimi* states that the test is "whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29) (alteration in original). The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id*. (quoting *Bruen*, 597 U.S. at 30). However, the Court need not delve too deep into the historical arguments as the Seventh

Circuit's binding precedent in *Gay* forecloses any facial invalidation of Section 922(g)(1) under the Second Amendment. *United States v. Richmond*, No. 21-CR-152, 2024 U.S. Dist. LEXIS 170175, at *7-8 (N.D. Ill. Sept. 20, 2024). Moreover, "[a]s numerous lower courts have observed, *Rahimi* reinforces the conclusion that [Section] 922(g)(1) remains consistent with the Second Amendment." *Id*. at *9-10 (collecting cases). Accordingly, *Rahimi* and *Gay* make clear that Section 922(g)(1) is constitutionally valid on its face.

Given the Seventh Circuit's holding in *Gay*, a historical review seems unnecessary. However, in the interest of thoroughness, the Court finds that the Government has presented sufficient evidence that Section 922(g)(1) is relevantly similar to laws our tradition is understood to permit as required by *Rahimi*. 602 U.S. at 692.

The Government points the Court to *Kanter v. Barr*, (Filing No. 25 at 10), where the Seventh Circuit stated that it has "suggested that felons were not historically understood to have Second Amendment rights." 919 F.3d 437, 445 (7th Cir. 2019). In *Kanter*, the Seventh Circuit, when reviewing the history of the Second Amendment, stated that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens, including felons." *Id*. at 446 (internal quotation marks and citations omitted).

The Government also points the Court to *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (Filing No. 25 at 10). In *Skoien*, the Seventh Circuit cited *Heller's* identification of the "highly influential" precursor to the Second Amendment the Dissent of the Minority of the Pennsylvania ratifying convention. *Id*. at 640 (quoting *Heller*, 554 U.S. at 604). "The [Dissent] asserted that citizens have a personal right to bear arms unless for crimes committed, or real danger of public injury." *Id*. The Seventh Circuit in *Skoien* also observed that "[m]any of the states, whose

own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." *Id*. (citing Stephen P. Halbrook, *The Founders' Second Amendment* 273 (2008), and C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L & Pub. Policy 695, 700-13 (2009)) (alteration in original).

Finally, the Government points the Court to three other circuits who have upheld Section 922(g)(1) in lawsuits challenging its constitutionality ([Filing No. 25 at 9](#) (citing *Vincent v. Garland*, 80 F.4th 1197, 1199 (10th Cir. 2023) *vacated by Vincent v. Garland*, 2024 U.S. LEXIS 2931 (2024); *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) *vacated by Dubois v. United States*, 2025 U.S. LEXIS 277 (2025)[3]; and *United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) *vacated by Jackson v. United States*, 2024 U.S LEXIS 2904 (2024)). In *Vincent*, the Tenth Circuit held that Section 922(g)(1) was constitutional as applied to a nonviolent felon convicted of bank fraud. *Vincent*, 80 F.4th at 1202. While *Vincent* was vacated in light of *Rahimi*, the Tenth Circuit on remand upheld this decision. *See Vincent v. Bondi*, 127 F.4th 1263 (10th Cir. 2025).

In *Jackson*, the Eight Circuit noted that early legislatures "authorized punishments that subsumed disarmament—death or forfeiture of a perpetrator's entire estate—for non-violent offenses involving deceit and wrongful taking of property." *Id*. at 503 (citing *An Act for the Punishment of Certain Crimes Against the United States*, Pub. L. No. 1-9, § 14, 1 Stat. 112, 115 (1790); Act of Feb. 21, 1788, ch. 37, 1788 N.Y. Laws 664-65; Act of May 1777, ch. XI, 9 *The Statutes at Large; Being a Collection of all the Laws of Virginia* 302-03 (1821); *A Digest of the Laws of Maryland* 255-56 (1799); Stuart Banner, *The Death Penalty: An American History* 3, 18, 23 (2002); John D. Bessler, *Cruel & Unusual: The American Death Penalty and the Founders' Eighth Amendment* 56-57 (2012); Kathryn Preyer, *Penal Measures in the American Colonies: An*

---

[3] This case is currently on remand in the Eleventh Circuit for further consideration in light of *Rahimi*.

*Overview*, 26 Am. J. Legal Hist. 326, 330-32, 342, 344-47 (1982)). While *Jackson* was vacated for further consideration in light of *Rahimi*, *see Jackson*, 2024 U.S. LEXIS 2904, the Eighth Circuit on remand once again held that Section 922(g)(1) was constitutional both on its face and as applied based on the historical citations above. *See United States v. Jackson*, 110 F.4th 1120, 1126-27 (8th Cir. 2024). Indeed, as stated by the D.C. Circuit, "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019).

The historical record above indicates that legislatures had a tradition of possessing the ability to prevent categories of people from possessing firearms to address a danger of misuse. The Court is therefore satisfied that Section 922(g)(1) comports with our nation's history of firearm regulation. Due to this, along with the binding precedent in *Gay*, Section 922(g)(1) is constitutional on its face.

**B.     Section 922(g)(1) is Constitutional as applied to Bricest**

Bricest also challenges Section 922(g)(1) as applied (Filing No. 16 at 16). To succeed on an as applied challenge, Bricest must show that Section 922(g)(1) is unconstitutional as applied to the facts of his case. *Phillips*, 645 F.3d at 863. The Government therefore must provide the Court with a sufficient history of our nation preventing individuals like Bricest to possess firearms.

The Government states in its brief that Bricest "has only submitted a facial challenge in his filing." (Filing No. 25 at 2). However, Bricest's brief clearly challenges Section 922(g)(1) as applied to him (*See* Filing No. 16 at 16). Regardless, the Court is satisfied that the above historical analysis provided by the Government is sufficient to withstand Bricest's as-applied challenge.

Bricest asserts that the Third Circuit has held that Section 922(g)(1) was unconstitutional as applied to individuals whose past offenses are nonviolent, recent, or otherwise not indicative of

a threat to public safety (Filing No. 16 at 16 (citing *Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) (en banc) (Hardiman, J., concurring), *overruled by Range v. Attorney General*, 69 F.4th 96, 99-100 (3d Cir. 2023)). He contends that his 2023 conviction does not involve the use or threatened use of force, violence, or danger to others. *Id*. Bricest's arguments are unpersuasive.

First, in deciding that Section 922(g)(1) is constitutional as applied to Bricest, the Court acknowledges that *Gay* left open the possibility that there is "some room for as-applied challenges" for individuals "whose most serious conviction is for a non-violent crime that did not lead to even one day in prison." 98 F.4th at 847 (citing *Range*, 69 F.4th 96). However, contrary to Bricest's assertions, the evidence indicates that he is a great distance from being an individual whose most serious crime is a non-violent crime that did not lead to even one day in prison.

At the time of the instant offense, Bricest had a prior felony conviction for Possession of an Altered Firearm for removing the serial number from a gun he owned, which, while not specifically listed in Ind. Code § 35-47-4-5 as a serious violent felony, is still a felony done in anticipation of violence. Courts in this Circuit have acknowledged that the purpose of removing the serial number from a gun is to use the weapon without law enforcement being able to trace the use.

The probable cause affidavit of the state court offense states that Bricest forced his way into a residence and struck his girlfriend in the face and arms and scratched the back of her thighs, struck two others in the face, and broke a window. Probable Cause Affidavit, *State of Indiana v. Anthony Bricest*, 10C04-2307-F5-000185 (Ind. Super. Oct. 24, 2023) (Filed July 18, 2023). Bricest was convicted of one count of Battery Resulting in Bodily Injury, and two counts of Battery. Judgment of Conviction and Sentence, *Bricest*, 10C04-2307-F5-000185 (Filed October 24, 2023). Further, for his felony conviction, Bricest received a sentence of three years, 96 days executed,

with two years and 269 days suspended to probation. *Id*. These circumstances lead to the conclusion that Section 922(g)(1) is constitutional as applied to Bricest. *See United States v. Holden*, 70 F.4th 1015, 1017-18 (7th Cir. 2023) ("Governments may keep firearms out of the hands of dangerous people who are apt to misuse them . . . [including] the sort of person who cannot be trusted with guns (say, someone under indictment for using violence against a domestic partner)[.]") (citing *Bruen*, 597 U.S. at 26).

Finally, Bricest's assertion that his "2023 Indiana conviction does not involve the use or threatened use of force, violence, or danger to others" is misguided (Filing No. 16 at 16). While the Court does not disagree that the specific charge of Possession of an Altered Firearm does not require violence as an element, Bricest's conviction for this charge was accompanied by multiple violent crimes including one count of Battery Resulting in Bodily Injury, and two counts of Battery. Bricest was convicted of these crimes because he forced his way into a residence and struck his girlfriend in the face and arms and left scratches on the back of her thighs, struck two others in the face, and broke a window as well. These circumstances clearly involve the use of force and violence to endanger others. Accordingly, the circumstances leading to Bricest's arrest indicate that he is a violent individual.

The Court finds that the Government has satisfied its burden and Section 922(g)(1) is therefore constitutional against Bricest. The Court's decision is furthered by the plethora of post-*Bruen* decisions from sister courts in this circuit finding Section 922(g)(1) constitutional, even if in varying forms. *See United States v. Regalado*, 709 F. Supp. 3d 619, 633-634 (N.D. Ind. Dec. 20, 2023) (collecting cases).

Whether *Gay* and *Rahimi* leave room for some as-applied challenges is an argument for another case with different facts. However, *Gay* and *Rahimi* make clear the Section 922(g)(1) is

constitutional as applied to Bricest. Accordingly, Bricest's Motion to Dismiss the Indictment and Motion to Dismiss Count II of the Indictment are **denied**.

## IV.    <u>CONCLUSION</u>

Under *Rahimi*, the Government bears the burden to show that Section 922(g)(1) is relevantly similar to laws our tradition is understood to permit. 602 U.S. at 692. Here, the Government has made such a showing. Section 922(g)(1) is consistent with our historical traditions. Section 922(g)(1) is therefore constitutionally valid on its face. It is also constitutional as applied to Bricest. For the reasons explained above, Bricest's Motion to Dismiss the Indictment as to Count I (Filing No. 16) and Motion to Dismiss Count II of the Indictment (Filing No. 18) are **DENIED**.

**SO ORDERED**.

Date:    6/30/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Pamela S. Domash
DOJ-USAO
pamela.domash@usdoj.gov

James Adrian Earhart
attyearhart@aol.com